Happy Johnson v. Spalding County, Georgia, 24-13531

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

### CASE NO. 24-13531
_____

HAPPY JOHNSON,

*Plaintiff/Appellant,*

v.

SPALDING COUNTY, GEORGIA,

*Defendant/Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
IN 3:22-CV-00182-TCB-RGV, HONORABLE TIMOTHY C. BATTEN, SR.

_____

### APPELLEE SPALDING COUNTY, GEORGIA'S BRIEF

Sean Keenan
Cruser Mitchell Novitz Sanchez Gaston & Zimet
Georgia Bar No. 523871
Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092
Direct Dial:  678-684-2154
skeenan@cmlawfirm.com

Happy Johnson v. Spalding County, Georgia, 24-13531

<u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT</u>

Pursuant to FRAP 26.1 and 11th Cir. R. 26.1, Defendant/Appellee Spalding County (hereinafter the "County") files this Certificate of Interested Persons and Corporate Disclosure Statement.

The undersigned counsel of record for Defendant/Appellee certifies that to the best of its knowledge, the following is a full and complete list of all parties, trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, including any subsidiaries, conglomerates, affiliates, parent corporation and any publicly held corporation that owns 10% or more of the stock of a party, and any other identifiable legal entities related to a party:

Attwood, Eleanor M.

Batten, Sr., Timothy C. – Chief District Judge, US District Court, Northern District of Georgia, Newnan Division;

Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP

Greenwhich Insurance Company

Johnson, Happy

Jones, Charles B.

Keenan, Sean

Happy Johnson v. Spalding County, Georgia, 24-13531

Legare, Attwood & Ragan, LLC

Spalding County, Georgia

Vineyard, Russell G. – Magistrate Judge, US District Court, Northern
District of Georgia, Newnan Division

This 18th day of February, 2025.

**CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP**

*/s/ Sean Keenan*
Sean Keenan
Georgia Bar No. 523871

Meridian II, Suite 2000
275 Scientific Drive
Norcross, Georgia 30092
skeenan@cmlawfirm.com
(768) 684-2154
Counsel for Appellee

Happy Johnson v. Spalding County, Georgia, 24-13531

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to 11th Cir. R. 28-1(c), Defendant/Appellee does not desire oral argument.

Happy Johnson v. Spalding County, Georgia, 24-13531

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

 DISCLOSURE STATEMENT ...................................................... C-1 of 2

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS........................................................................... ii

TABLE OF AUTHORITIES ..................................................................v

STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER

PARTIES ...........................................................................................ix

JURISDICTIONAL STATEMENT ........................................................x

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE....................................................................2

    Course of Proceedings and Dispositions in the Court Below……………….2

    Statement of the Facts……………………………………………………….2

        A. Happy Johnson's Employment at SCCI. .........................................2

        B. Eric Sellers Starts as Counselor at SCCI. .......................................3

        C. The County Hires Eric Sellers as Deputy Warden of Care and
           Treatment. ..........................................................................5

           i.   Warden Humphrey Established an Independent Hiring
               Panel. ...................................................................5

           ii.   The Independent Panel Ranked Sellers Higher Than Every
               Other Candidate..................................................6

D. Johnson Presents Inadmissible and Insignificant Declarations to Support Claims.................................................................................8

    i.  Joni Adams' Declaration..............................................................9

    ii.  Deputy Warden Beth Griffin's Declaration...............................9

    iii.  Stanley Granger's Declaration..................................................10

Standard of Review…………………………………………………………10

SUMMARY OF THE ARGUMENT……………………………………….....11

ARGUMENT AND CITATIONS OF AUTHORITY………………….......…..13

I.    JOHNSON FAILED TO PRESENT DIRECT EVIDENCE OF DISCRIMINATION …………………………………......................13

    A. The District Court Properly Refused to Consider Joni Adams' Inadmissible Double Hearsay Declaration………………………13

    B. Office Gossip Does Not Constitute Direct Evidence……………19

II.    JOHNSON'S CONVINCING MOSAIC THEORY FAILS…………………………………...........................................21

    A. Johnson's "stray remark" analysis is inapposite…………………21

    B. Humphrey's alleged comment constitutes a stray remark as a matter of law…………………………………………………..22

III.    JOHNSON CANNOT SATISFY THE MCDONNELL DOUGLAS FRAMEWORK …………………………...........................................24

    A. Johnson Cannot Establish a Prima Facie Case Under Title VII…………………………………………………..24

        i.  Johnson has not established a similarly situated comparator……………………………………………...25

    B. Johnson Cannot Establish a Prima Facie Case Under the ADA…27

Happy Johnson v. Spalding County, Georgia, 24-13531

IV.    JOHNSON FAILED TO REBUT THE COUNTY'S LEGITIMATE NON-DISCRIMINATORY JUSTIFICATIONS FOR PROMOTING SELLERS. ………………………………………………………..29

A. Johnson must do more than suggest a jury could infer she was more qualified than Sellers………………………………………31

B. Humphrey's alleged comment to Griffin does not prove pretext…………………………………………………………..33

C. Humphrey did not ignore Sellers' alleged application misrepresentations and discrepancies……………………………34

D. Johnson's conjecture that a jury could infer Humphrey did not place any weight on the panel's recommendation is not enough to prove pretext…………………………………………………………..35

V.    JOHNSON'S MIXED MOTIVE CLAIM FAILS AS A MATTER OF LAW……………………………………………..41

CONCLUSION  ....................................................................................42

Happy Johnson v. Spalding County, Georgia, 24-13531

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                  **<u>Page</u>**

<u>Adicks v. S. H. Kress & Co.</u>, 398 U.S. 144 (1970) ............................................. 10

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)...................................... 10

<u>Anthony v. Georgia</u>, 69 F.4th 796 (11th Cir. 2023) ........................................... 26

<u>Burns v. Gadsden State Community College</u>, 908 F.2d 1512 (11th Cir.1990)... 20

<u>Chapman v. AI Transp.</u>, 229 F.3d 1012 (11th Cir. 2000).................................... 30

<u>Conner v. Lafarge N. Am., Inc.</u>, 343 F. App'x 537 (11th Cir. 2009) ................. 36

<u>Crawford v. City of Fairburn, Ga.</u>, 482 F.3d 1305 (11th Cir. 2007) .................. 30

<u>DeBiasi v. Charter Cnty. of Wayne,</u>

537 F. Supp. 2d 903 (E.D. Mich. 2008)........................................................ 20,21

<u>Delgado v. U.S. Dep't of Transp.</u>, 709 F. Supp. 2d 1360 (S.D. Fla. 2010)......... 40

<u>Edwards v. Nat'l Vision, Inc.</u>, 946 F. Supp. 2d 1153 (N.D. Ala. 2013).............. 13

<u>E.E.O.C. v. Joe's Stone Crabs, Inc.</u>, 296 F.3d 1265 (11th Cir. 2002)................ 24

<u>E.E.O.C. v. TBC Corp.</u>, 889 F. Supp. 2d 1368 (S.D. Ga. 2012) ........................ 23

<u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466 (11th Cir. 1991)....................... 40

<u>Fed. Trade Comm'n v. Lanier L., LLC,</u>

715 F. App'x 970 (11th Cir. 2017) ..........................................................11,15,18

<u>Gogel v. Kia Motors Mfg. of Georgia, Inc.</u>, 967 F.3d 1121 (11th Cir. 2020)..... 40

<u>Green v. Miami-Dade Cnty.</u>, No. 02-22996-CIV,

Happy Johnson v. Spalding County, Georgia, 24-13531

2003 WL 22331877 (S.D. Fla. Sept. 9, 2003) ...................................................... 31

Harris v. Jackson, No. 1:19-CV-5849-MLB-JKL,

2022 WL 5240396 (N.D. Ga. July 18, 2022) ...................................................... 30

Haynes v. W.C. Caye & Co., Inc., 52 F.3d 928 (11th Cir.1995) ......................... 20

Hutcherson v. Progressive Corp., 984 F.2d 1152 (11th Cir. 1993) ..................... 10

Lee v. GTE Fla., Inc., 226 F.3d 1249 (11th Cir. 2000) ........................................ 25

Lewis v. City of Union City, Georgia, 918 F.3d 1213 (11th Cir. 2019) .........…..25

Licausi v. Symantec Corp., 378 F. App'x 964 (11th Cir. 2010) .................... 28,38

Little v. Star Asia Int'l, Inc., NO. 1:20-cv-397-WMR-JKL,

2021 WL 4815897 (N.D. Ga. Mar. 10, 2021) ................................................. 30,41

Lowe v. Exel, CIVIL CASE NO. 3:17-cv-00014-TCB-RGV,

2018 WL 2016277 (N.D. Ga. Apr. 27, 2018) ....................................................... 24

McDade v. Alabama Dep't of Transportation, No. 2:16-CV-158-ECM,

2020 WL 411984 (M.D. Ala. Jan. 24, 2020) ........................................................ 25

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) .................................. 24

McDowell v. Brown, 392 F.3d 1283 (11th Cir. 2004) ......................................... 11

McMillian v. Johnson, 88 F.3d 1573 (11th Cir. 1996) ................................... 14,17

Merritt v. Dillard Paper Co., 120 F.3d 1181 (11th Cir. 1997) ........................ 20,21

Nix v. WLCY Radio/Rahall Comms., 738 F.2d 1181 (11th Cir.1984) ............... 40

Nolen v. Boca Raton Community Hospital, Inc.,

373 F.3d 1151 (11th Cir. 2004) ........................................................... 11

O'Bryant v. Langford,

No. 505CV131-RS/EMT, 2008 WL 906741 (N.D. Fla. Apr. 3, 2008) .......... 14,17

Pace v. Capobianco, 283 F.3d 1275 (11th Cir.2002) ..................................... 14,17

Rogers-Libert v. Miami-Dade Cnty., 184 F. Supp. 2d 1273 (S.D. Fla. 2001) .... 31

Rojas v. Fla., 285 F.3d 1339 (11th Cir. 2002) ................................................. 29,38

Schultz v. Royal Caribbean Cruises, Ltd.,

465 F. Supp. 3d 1232 (S.D. Fla. 2020) ................................................ 20

Smith v. LePage, 834 F.3d 1285 (11th Cir. 2016) .......................................... 15,16

Taylor v. Battell Columbus Laboratories,

680 F. Supp. 1165 (S.D. Ohio 1988) .................................................. 14

Tennial v. United Parcel Serv., Inc., 840 F.3d 292 (6th Cir. 2016) ..................... 25

Thomas v. Richmond Cnty. Sch. Dist.,

No. CV 107-092, 2008 WL 4857521 (S.D. Ga. Nov. 6, 2008) ..................... 28,38

Tompkins v. Cuts By Us, Inc., 2019 WL 3387775 (N.D. Ala. July 26, 2019) ... 30

Turlington v. Atlanta Gas Light Co., 135 F.3d 1428 (11th Cir. 1998) ........... 11,22

Wascura v. City of S. Miami, 257 F.3d 1238 (11th Cir. 2001) ........................... 27

Williams v. Hous. Opportunities for Persons with Exceptionalities,

777 F. App'x 451 (11th Cir. 2019) ..................................................... 23

Happy Johnson v. Spalding County, Georgia, 24-13531

## **STATUTES AND OTHER AUTHORITIES**

Fed. R. Evid. 801 ................................................................................13

F.R.C.P. 56(c) ...................................................................................10

F.R.C.P. 56(e) ...................................................................................14

Happy Johnson v. Spalding County, Georgia, 24-13531

## STATEMENT REGARDING ADOPTION OF BRIEFS
## OF OTHER PARTIES

Defendant/Appellee Spalding County respectfully decline to adopt any portion of Plaintiff/Appellant Happy Johnson's (hereinafter "Johnson") Brief and submit herewith their own brief.

Happy Johnson v. Spalding County, Georgia, 24-13531

## JURISDICTIONAL STATEMENT

This Court has jurisdiction of this matter under 28 U.S.C. § 1291 because this is an appeal of a final decision of the United States District court for the Northern District of Georgia.

Happy Johnson v. Spalding County, Georgia, 24-13531

## <u>STATEMENT OF THE ISSUES</u>

I.  Whether the district court abused its discretion in sustaining Appellee's objection to Appellant's double hearsay evidence, and therefore properly refused to consider the hearsay evidence when ruling on summary judgment.

II. Whether the district court erred in finding that Appellant's circumstantial evidence did not sufficiently rebut Appellee's non-discriminatory justifications for its promotional decision.

III. Whether the district court properly applied the summary judgment standard.

Happy Johnson v. Spalding County, Georgia, 24-13531

## STATEMENT OF THE CASE

### I.    Course of Proceedings and Disposition Below

Plaintiff/Appellant Happy Johnson ("Johnson") filed this lawsuit against Defendant/Appellee Spalding County, Georgia (the "County") under Title VII for gender discrimination and under the ADA for associational disability discrimination. (Doc. 1). Following the close of discovery, the County moved for summary judgment on all of Johnson's claims. (Doc. 46). The district court adopted the Magistrate's Report and Recommendation and granted summary judgment in favor of the County. (Doc. 55). The district court entered its judgment on September 24, 2024. (Doc. 65).  Johnson now appeals. (Doc. 66).

### II.    Statement of the Facts

#### A.    Happy Johnson's Employment at SCCI.

Johnson started working for the County at Spalding County Correctional Institute ("SCCI") on July 24, 1994, as a correctional officer. (Doc. 46-2 p. 15:2-14). The County promoted Johnson to the role of Counselor on July 24, 1998. (Doc. 46-11). Then, on December 24, 2000, the County promoted Johnson to Chief Counselor. (Id.) Johnson served as the Chief Counselor at SCCI until she retired shortly before this appeal. (Doc. 46-2, p. 17:9-11). Importantly, undisputed evidence shows that Johnson has no experience as a Warden or Deputy Warden at

Happy Johnson v. Spalding County, Georgia, 24-13531

SCCI or any other correctional facility. (Doc. 46-3). As Chief Counselor, Johnson's direct report was the Deputy Warden of Care and Treatment, Beth Griffin, until Deputy Warden Griffin retired in June 2021. (Doc. 46-2, p. 17:12-20; Doc. 46-4, p. 23:12-16). The Deputy Warden of Care and Treatment reported directly to the Warden, Carl Humphrey. (Doc. 46-5, p. 9:25, 10:1-3). Warden Carl Humphrey began his term as Warden over SCCI in January 2015. (Id., at p. 7: 13-15).

In December 2016, Johnson's husband received a cancer diagnosis. (Doc. 46-2, p. 73:11-12). Johnson regularly took time off to take her husband to his treatments without issue from Warden Humphrey, SCCI, or the County. (Doc. 46-5, p. 45:12-19). By 2020, Johnson took her husband to doctor's appointments and treatments at least once a week. (Doc. 46-2, p. 110:16-21). Tragically, Johnson's husband died in June 2021. (Id., at p. 8:18-19).

### B.    *Eric Sellers Starts as Counselor at SCCI.*

Eric Sellers has over 32 years of experience in corrections. (Doc. 46-6). He worked for the Georgia Department of Corrections ("GDOC") as a Counselor, Assistant Superintendent, and served as a Warden for over 14 years at five facilities: Burgess Correctional Training Center, Phillips State Prison, Hancock State Prison, Georgia Diagnostic and Classification Prison, and Riverbend

3

Correctional Facility. (Id.) Sellers retired from the GDOC in January 2018, then began working as a Warden at a private correctional facility, Riverbend Correctional Institution, from November 2018 until he resigned in October 2019. (Id.; Doc. 46-4, pp. 31:24-25, 32:1-2).

Sellers learned of the open Counselor position at SCCI through Indeed. (Doc. 46-4, p. 13:12-19). He applied for the position in October 2020 without having any conversations with anyone at SCCI about it. (Doc. 46-7; Doc. 46-4, p. 14:4-15, Ex. "C"). Johnson and Deputy Warden Griffin interviewed Sellers for the Counselor position. (Doc. 46-2, p. 78:9-17). Even though Appellant Johnson and Deputy Warden Griffin **rated Sellers the highest out of every candidate**, they recommended a different candidate who previously had worked at SCCI, and they believed that Sellers could fill a different teaching position. (Id., at pp. 79:1-25, 80:1-25, 81:1-10). Nevertheless, consistent with his standard practice, Warden Humphrey recommended, and the County hired, Sellers because he was **the highest scoring applicant** for the position for which he applied. (Id., at p. 80:15-20). Thus, in November 2020, Sellers started as a Counselor at SCCI. (Doc. 46-4, p. 19:20-25).

Happy Johnson v. Spalding County, Georgia, 24-13531

### C.    The County Hires Eric Sellers as Deputy Warden of Care and Treatment.

Deputy Warden Griffin announced her retirement in early March 2021, to become effective in June 2021. (Doc. 46-5, p. 46:5-14). Spalding County posted the Deputy Warden of Care and Treatment job opening on the county website in March 2021. (Doc. 46-5, p. 75:9-23). Johnson applied for the job on March 8, 2021. (Doc. 46-12). Sellers applied for the job on March 23, 2021. (Doc. 46-4, p. 27:21-24; Doc. 46-13). A total of 14 applicants applied for the position, and 7 were ultimately interviewed for it. (Doc. 46-5, p. 118:15-17; Doc. 46-14).

#### i.    _Warden Humphrey Established an Independent Hiring Panel._

At SCCI, the hiring process generally went as follows: first a panel interviewed the candidates; the panel scored the candidates and made a recommendation, which the Warden then sent to the County Manager for approval; once the County Manager approved the candidate, the County conducted a background check on the candidate and made the final decision based on the outcome of the background check and the panel's recommendation. (Doc. 46-5, p. 16:19-25, 17:1-13).

Interviews were conducted by a three-person panel. (Id., p. 79:13-25, 80:1-7). When selecting individuals to make up the panel, Warden Humphrey looked for people who would be unbiased and who had expertise in the type of job for which

the interviews were being conducted. (Id. p. 77:13-25). To that end, in this case, Warden Humphrey asked Deputy Warden Betty Dean, Warden Dwight Hamrick, and Warden Cynthia Nelson to volunteer to conduct the interviews. (Id. p. 79:18-25, 80:1-7). Thus, the Panel that interviewed Appellant Johnson consisted of two women and one man.  (Id.)

The Panel developed a list of 15 objective questions to ask each applicant. (Id. p. 88:13-19; Doc. 46-8; Doc. 46-9; Doc. 46-10). The questions objectively assess the applicant's qualifications, competency, and fitness for the Deputy Warden Role. (Id.; Doc. 46-14). Warden Humphrey had no input and played no role in developing the list of questions. (Doc. 46-5; p. 118:1-4; Doc. 46-8; Doc. 46-9; Doc. 46-10).

> ### ii.   <u>The Independent Panel Ranked Sellers Higher Than Every Other Candidate.</u>

The 3-person, independent panel interviewed all 7 candidates on April 14, 2021, including Appellant Johnson. (Doc. 46-5, p. 91:3-9). The applicants that were interviewed consisted of four females and three males. (Doc. 46-14). Each member of the independent panel rated the applicant's answers on a numerical scale of 1-5; 1 being the worst and 5 being the best score. (Id.)  Each applicant's answer scores were then totaled, with the top three applicants as follows: (1) Eric Sellers (202), Clinton Perry (182), Happy Johnson (178). (Id.) Among other things,

Happy Johnson v. Spalding County, Georgia, 24-13531

Sellers received a "5" from all three Panel members to the question, "Describe your educational and work history," while Johnson received a "4" from all three panelists on that same question. (Id.) Also, significantly, the independent panel recognized that both Perry and Sellers had experience as a Warden or Deputy Warden, but Johnson did not. (Id.)

Overall, the independent panel rated Johnson lower than Sellers because Johnson demonstrated a proficiency in only her duties as Counselor and Spalding County policy, not as a warden. (Doc. 46-8; Doc. 46-9; Doc. 46-20; Doc. 46-5, p. 93:18-25, 94:1-19). According to both Deputy Warden Dean and Warden Nelson, Johnson did not see the "bigger picture" necessary for the Deputy Warden position. (Doc. 46-8; Doc. 46-10). On the other hand, the independent panel determined that Sellers understood County policy and also deeply understood the "bigger picture" required to make decisions as a Deputy Warden. (Id.; Doc. 46-9). Overall, Johnson received a total of ten ratings of "5" from all panelists, while Sellers received a total of 24 ratings of "5". (Doc. 46-14).

Importantly, each of the three independent Panel members testified under oath and there is no dispute that Warden Humphrey had no bearing or influence on the panel's rankings. (Doc. 46-8; Doc. 46-9; Doc. 46-10). Each independent panel

7

Happy Johnson v. Spalding County, Georgia, 24-13531

member also had no knowledge of Johnson's husband's illness at the time of the interview. (Id.)

After the interviews, Warden Humphrey met with the panelists and asked for their recommendation for who would make the best Deputy Warden of Care and Treatment. (Doc. 46-5, p. 92:2-16). After receiving the panel's rankings and recommendation, Warden Humphrey sent a letter to the Spalding County Human Resources Director recommending Sellers for the position of Deputy Warden. (Id., at p. 91:14-18; Doc. 46-14). The County Manager then approved Sellers for the position such that SCCI hired the highest scoring and most qualified applicant. (Doc. 46-15). Only twice has Warden Humphrey ever recommended someone other than the highest ranked interviewee and, in both instances, the highest ranked interviewee had a history of disciplinary actions against them. (Doc. 46-5, p. 120:9-15). In this instance, Warden Humphrey knew of no disciplinary actions against Sellers, and recommended him because he was the most qualified and highest ranked candidate for the position. (Id.)

### D. Johnson Presents Inadmissible and Insignificant Declarations to Support Claims.

In opposition to the County's Motion for Summary Judgment, Johnson presented three self-serving declarations that she argued establish facts sufficient to raise questions of fact and support an inference of pretext (Doc. 51):

Happy Johnson v. Spalding County, Georgia, 24-13531

i.    _Joni Adams' Declaration._

Joni Adams was the administrative assistant for the Deputy Wardens at SCCI and had worked with Johnson since 1999. (Doc. 51-4). In a declaration filled with hearsay, Adams repeated alleged office gossip. Without providing a date or even a date range, she alleged that Angie Perdue, Humphrey's administrative assistant, told her that she heard Humphrey say that he wanted a man for the Deputy Warden position and was not considering Johnson for the position because of her husband's illness. (Id.)

ii.    _Deputy Warden Beth Griffin's Declaration._

In her declaration, prior Deputy Warden of Care and Treatment, Beth Griffin, stated that "[a]round the time of [her] announcement, [she] heard Warden Humphrey say while [they] were in office one day that "we needed to lay off of Happy because she had too much going on with her husband being so sick." (Doc. 51-2). Griffin did not provide any further details regarding this alleged out of court statement, including the identity of the person who Humphrey allegedly talking to, what they were allegedly talking about, or what "lay off of" means. (Id.) Rather, she simply testified that the alleged comment was "strange." (Id.)

9

iii.    _Stanley Granger's Declaration._

In his declaration, Stanley Granger, SCCI Chief Security Captain and longtime coworker of Johnson's, represented that, in the "latter half of 2020," he allegedly heard Humphrey take a call where he told the caller that "all he had at that time was an open counselor position but would have an available deputy warden position in the next few months." (Doc. 51-3). Granger admits that he cannot confirm that Sellers was the person on the other end of the call and merely speculates to that fact based on "a few conversations after the call." (Id.) Both Humphrey and Sellers denied ever having this alleged conversation and Johnson has presented no other evidence establishing who was on the other end of that call. (Id.)

## III.        Standard of Review

In general, this Court reviews a grant of summary judgment _de novo_. Hutcherson v. Progressive Corp., 984 F.2d 1152, 1155 (11th Cir. 1993). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law". F.R.C.P. 56(c)_;_ Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970). Applicable substantive law identifies which facts are material in a given case. Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 248 (1986). Summary judgment should be granted when,

"after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." See McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cir. 2004). The district court's decision may be affirmed if the result is correct, even if the court relied upon an incorrect ground or gave a wrong reason. Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 n. 9 (11th Cir. 1998).

Further, this Court reviews evidentiary rulings at the summary judgment stage for abuse of discretion and only overturns them where the district court made a clear error of judgment or has applied the wrong legal standard. Fed. Trade Comm'n v. Lanier L., LLC, 715 F. App'x 970, 976 (11th Cir. 2017).

## SUMMARY OF THE ARGUMENT

Johnson's appeal asks this Court to come to an incredible conclusion: that despite the undisputed facts that Johnson was significantly less qualified than Sellers, that she was substantially outperformed by other candidates in the interviews, and that the independent panel unanimously did not recommend her, the County based its decision not to promote her on the facts that she is a woman and her husband was ill. In support of this far-fetched story, Johnson relies on declarations that are rife with hearsay and lacking in any credible detail to argue

Happy Johnson v. Spalding County, Georgia, 24-13531

that because Warden Humphrey allegedly made some stray, out of court statements, the County's legitimate justifications must be pretextual, or at a minimum, raise questions of fact about the real reason the County did not promote her. Neither the undisputed facts nor the law supports this incredible conclusion.

The district court properly granted the County's Motion for Summary judgement for the following reasons: First, the only piece of evidence Johnson proffers as direct evidence of discrimination is nothing more than inadmissible office gossip, which is unreliable, lacking detail and context, and cannot save her claim from judgment as a matter of law. Second, even assuming that Johnson could establish a *prima facie* case of gender or disability discrimination under *McDonnell Douglas*, she still failed to rebut any of the County's legitimate non-discriminatory justifications for promoting Sellers. Johnson simply quarrels with the wisdom of the County's justifications without provided any evidence to support her claims, but that is not enough to save her claims under a convincing mosaic theory or *McDonnell Douglas*. Thus, considering the undisputed evidence and law, the district court came to the only rational conclusion: that Johnson has not presented any material questions of fact for a jury.

The district court properly granted summary judgment in favor of the County and its decision must be affirmed. On appeal, Johnson fails to identify a

Happy Johnson v. Spalding County, Georgia, 24-13531

single reversible error by the district court and simply continues to question the wisdom of the County's decision without any evidence to support her claims. Despite Johnson's attempt to do so, it is not enough to merely suggest that a jury could make the same substantial logical leaps that she makes in order to infer discrimination. She has failed to present any material questions of fact for a jury and her claim is subject to judgment as a matter of law. Thus, for the reasons articulated above and explained in further detail below, the district court got it right and its decision must be affirmed.

<u>**ARGUMENT AND CITATION OF AUTHORITIES**</u>

## I.    JOHNSON FAILED TO PRESENT DIRECT EVIDENCE OF DISCRIMINATION

### A. The District Court Properly Refused to Consider Joni Adams' Inadmissible Double Hearsay Declaration.

Joni Adams' declaration, which sets forth an alleged out-of-court statement by Perdue recounting another alleged out-of-court statement by Warden Humphrey constitutes inadmissible double hearsay. Fed. R. Evid. 801. In the case of double hearsay, both layers of hearsay must fall under an exception in order to be admissible. <u>Edwards v. Nat'l Vision, Inc.</u>, 946 F. Supp. 2d 1153, 1160-61 (N.D. Ala. 2013). At the summary judgment stage, a court may consider an inadmissible hearsay statement if it could be reduced to admissible evidence at trial, "but a

Happy Johnson v. Spalding County, Georgia, 24-13531

suggestion that admissible evidence ***might be found in the future* is not enough to defeat a motion for summary judgment.**" McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996) (emphasis added).

As for the first layer of hearsay, under Rule 56(e), evidence in an affidavit sufficient to defeat summary judgment requires personal knowledge. O'Bryant v. Langford, No. 505CV131-RS/EMT, 2008 WL 906741, at *8 (N.D. Fla. Apr. 3, 2008) (citing Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir.2002)). Adams has no personal knowledge of Humphrey's alleged comments. Her personal knowledge extends only to what Perdue allegedly told her. Thus, her affidavit regarding what Humphrey allegedly said cannot save her claim from summary judgment as a matter of law. Id.

With regard to the second layer of hearsay, i.e., Perdue's alleged out-of-court statement to Adams regarding what Perdue allegedly heard Humphrey say, Johnson argues that proffers two arguments[1] supporting her contention that this

---

[1] Johnson makes the throw-away argument that Perdue is an agent of SCCI, making her alleged statement an admission of a party opponent, an exception to the rule against hearsay. (Doc. 12, p. 28, n. 4). Johnson cites no caselaw that supports her argument, but rather cites cases that specifically stand for the opposite conclusion. Indeed, as the district court properly recognized, the cases Johnsons cites specifically note that for this exception to apply, the statement must be made within the scope of the agent's employment, which means that the speaker was involved in the decision. Taylor v. Battell Columbus Laboratories, 680 F. Supp. 1165, 1171-72 (S.D. Ohio 1988). Johnson has not established that Perdue, an

layer should have been considered by the district court. First, citing this Court's decision in <u>Smith v. LePage</u>, 834 F.3d 1285, 1296 n.6 (11th Cir. 2016),[2] she argues that the evidence in Adams' declaration could be made admissible by calling Perdue to testify at trial. (Doc. 12, p. 27-28). Second, the district court found that Humphrey's alleged comment about "laying off of" Johnson was a stray remark; thus, Johnson argues in the alternative that Adams' declaration regarding what Perdue allegedly said could be admitted not to prove the truth of the matter asserted, but rather to show that Humphrey's alleged comment was not a stray remark. (Doc. 12, p. 29).  Both arguments fall flat.

First, Johnson's reliance on <u>Smith</u> is misplaced. In <u>Smith</u>, Kasib testified in his deposition that he saw his father drop the knife he was holding after being tased by police. <u>Smith</u>, 834 F. 3d at 1296 n.6.  He was never asked and, therefore, never mentioned seeing anyone pick it up after his father dropped it. <u>Id</u>. His mother later offered a hearsay declaration stating that Kasib told her that he saw a police officer

_____

*administrative assistant*, was involved in any way in the decision to promote Sellers to the position of Deputy Warden. Thus, this perfunctory argument fails.

[2] Johnson also cites <u>Fed. Trade Comm'n</u>, 715 F. App'x at 978 supporting the principle that a hearsay affidavit may be made admissible by calling the affiant to testify at trial. (Doc. 12, p. 27). This is inapplicable here because Perdue is not the affiant, Adams is. Calling Adams to testify to what Perdue allegedly said she heard Humphrey say would do no more than regurgitate Adams' declaration at trial and is certainly not enough to render the testimony admissible or defeat summary judgment.

Happy Johnson v. Spalding County, Georgia, 24-13531

pick up the knife after his father dropped it. Id. On summary judgment, the court considered the mom's declaration because the hearsay statement did not necessarily contradict what Kasib testified to in his deposition, and Kasib could be called to testify to the contents of the declaration at trial. Id. Smith is easily distinguishable from the present case because Kasib was deposed in discovery and demonstrated that he had personal knowledge of what happened with the knife but was simply not asked what happened after his father dropped it--his mom's clarifying hearsay declaration did not contradict the evidence presented, but rather added to evidence already in the record. Id. Thus, this Court's holding makes good sense and is in line with prior precedent: Kasib demonstrably had personal knowledge of the substance of his mom's declaration and his testimony at trial would not constitute new evidence but would simply be an extrapolation on the same evidence he presented during his deposition and about which it was known he could testify to at trial. Thus, the rule established in Smith is that a hearsay declaration can be reduced to admissible form by calling the declarant to testify at trial where the declaration does not contradict the declarant's testimony that is already in the record, not, as Johnson contends, that a hearsay declaration can be reduced to admissible form by merely suggesting that the declarant "might" testify to the declaration's contents at trial.

Happy Johnson v. Spalding County, Georgia, 24-13531

Here, Johnson's assertion that she could call Perdue to testify about Adams' declaration is nothing more than conjecture and wishful thinking. Indeed, she merely claims that the double hearsay "**may not**" be hearsay "**if**" Perdue admits to the conversation, but she does not know that Perdue could or would. (Doc. 12, p. 28). Despite having ample opportunity, Johnson did not depose Perdue or otherwise seek her testimony at any time during discovery, so there is no record evidence that Perdue had any personal knowledge of the conversation Adams' claims they had, that she has any personal knowledge of Humphrey's alleged discriminatory comments, or that she could otherwise testify to any of this at trial. Johnson merely hopes that Perdue would testify to these facts at trial. As such, the district court properly found that Perdue's potential testimony regarding the alleged out-of-court conversation with Adams would constitute new evidence that Johnson hopes she might find in the future, which this Court, in line with the majority, has made clear is not enough to defeat summary judgment. McMillian, 88 F.3d at 1584; see also O'Bryant, 2008 WL 906741, at *8 (citing Pace, 283 F.3d at 1278) (evidence in an affidavit sufficient to defeat summary judgment requires personal knowledge.)

On appeal, Johnson merely questions the judgment of the district court without showing that it made any clear errors of judgment, applied the wrong legal

17

Happy Johnson v. Spalding County, Georgia, 24-13531

standard, abused its discretion, or otherwise based its ruling on an erroneous application of the facts or law. Fed. Trade Comm'n, 715 F. App'x at 976 (evidentiary rulings at the summary judgment stage are reviewed for abuse of discretion). Thus, applying the highly deferential abuse of discretion standard, the district court properly determined that it could not consider Adams' declaration at summary judgment and this Court must affirm the lower court's decision.

Second, because the district court found that Humphrey's alleged comment about "laying off of" Johnson constituted a stray remark, Johnson argues that she will use Adams' testimony not to prove the truth of the matter asserted, but to show that Humphrey's earlier alleged comment was not a stray remark. (Doc. 12, p. 29). Johnson's argument ignores basic hearsay principles and confuses what the truth of the matter asserted in Adams' testimony is. Adams' testimony simply explains what Perdue allegedly told Adams. Thus, analyzed properly, the truth of the matter asserted in Adams' testimony is that Perdue heard Humphrey make the allegedly discriminatory comments, not that Humphrey harbored discriminatory intent. So, Johnson's argument is only coherent if the matter Adams' asserts is true; i.e., that Humphrey made the comments about which Perdue allegedly told Adams. To put it simply, Adams' testimony could only establish that Humphrey's earlier alleged comment (the "lay off of" comment) was not stray if her testimony

was offered to prove the fact that Humphrey made the later statement; the statement Adams claims Perdue told her about (that he wanted a man for the position and was not considering Johnson because of her husband's illness). It is wholly unclear what purpose Adams' testimony would be proffered at trial other than to prove that Humphrey made the allegedly discriminatory comment to Perdue—it can only be hearsay or would be completely irrelevant. Thus, Adams' testimony is inadmissible hearsay and could not be reduced to admissible evidence at trial under this theory.

As the district court properly recognized, Johnson's attempt to use Adams' inherently unreliable affidavit to manufacture questions of fact to overcome summary judgment cannot be allowed. To do so would run afoul of the rule against hearsay and allow plaintiffs to overcome summary judgment by presenting completely unreliable and inadmissible evidence and simply suggesting that trial may result in favorable evidence coming to light. This, however, is not the law. The district court agreed, and its ruling must be upheld.

### B. Office Gossip Does Not Constitute Direct Evidence.

Johnson attempts to present Adams' office gossip as direct evidence. Even if Johnson were to somehow overcome the hearsay nature of Adams' declaration, however, Adams' declaration still presents no direct evidence of discrimination.

The Eleventh Circuit has defined direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitutes direct evidence of discrimination." Schultz v. Royal Caribbean Cruises, Ltd., 465 F. Supp. 3d 1232, 1263 (S.D. Fla. 2020) (internal quotations and citation omitted). Moreover, "[i]t is well-settled that 'direct evidence of discrimination cannot be based on rumors, conclusory allegations, or subjective beliefs.'" DeBiasi v. Charter Cnty. of Wayne, 537 F. Supp. 2d 903, 915 (E.D. Mich. 2008) (citations omitted).

Adams' declaration is nothing more than a repeating of office gossip (i.e., Adams heard an out-of-court statement by Purdue said that Humphrey allegedly said…), which does not constitute direct evidence. Johnson cites wholly inapplicable cases to support her claim that Adams' declaration is direct evidence, (Doc. 12, p. 23) but none of them hold that a statement from a third-party repeating what another person allegedly heard a decision-maker say counts as direct evidence. See, e.g., Haynes v. W.C. Caye & Co., Inc., 52 F.3d 928, 930 (11th Cir.1995); See also Burns v. Gadsden State Community College, 908 F.2d 1512,

Happy Johnson v. Spalding County, Georgia, 24-13531

1518 (11th Cir.1990) (affidavit from someone who heard the decision maker say "no woman would be named to a B scheduled job").

Put more plainly, Adams has no personal knowledge of what Humphrey allegedly said and simply recounts that Perdue allegedly overheard that Humphrey held discriminatory intentions. This is not direct evidence. Indeed, inferences or presumptions must still be made, i.e., (1) that Perdue's comment to Adams is worth considering, (2) that Perdue has legitimate reasons for making her alleged comment, (3) and that what she claims is true. See Merritt, 120 F.3d at 1189. Thus, as the district court properly recognized, Adams' declaration presents nothing more than mere inadmissible office gossip and does not constitute direct evidence of discrimination. See DeBiasi, 537 F. Supp. 2d at 915.

## II.    JOHNSON'S CONVINCING MOSAIC THEORY FAILS

### A. Johnson's "stray remark" analysis is inapposite.

Johnson also argues that the district court, through its adoption of the R&R, "explained away" Humphrey's alleged comment as not supporting a convincing mosaic theory. (Doc. 12, p. 36 and 39). This argument does not address the crux of the district court's Order: the magistrate considered Humphrey's alleged comment at length and properly concluded, and the district court agreed, that Humphrey's alleged comment did not rebut the County's non-discriminatory justifications and

Happy Johnson v. Spalding County, Georgia, 24-13531

was not sufficient to support an inference of pretext and therefore, Johnson's convincing mosaic theory fails. (Doc. 55, p. 56). Indeed, as discussed in further detail in Section IV below, even if the district court acknowledged that Humphrey's alleged comment may be probative of discriminatory intent, the alleged comment does not rebut the County's legitimate non-discriminatory justifications and prove pretext. It is undisputed that the independent panel did not know about the alleged comment and Warden Humphrey did not influence their rankings. Thus, Johnson's "stray remark" analysis simply misses the point and does not warrant a different result. See Turlington, 135 F.3d at 1433 n. 9 (a district court's decision may be affirmed even if appellate court disagrees with reasoning).

### B. Humphrey's alleged comment constitutes a stray remark as a matter of law.

In addition to Johnson's failure to rebut the County's non-discriminatory justifications and pretext arguments, and even though Johnson argues that Humphrey's alleged comment to Griffin that they needed to "lay off" of Johnson because of her husband's illness constitutes "strong circumstantial evidence of a disability animus," (Doc. 12, p. 36) the caselaw is clear that Johnson is wrong in her "stray remark" analysis.

Humphrey's alleged comment to Griffin was a stray remark at best and does not constitute evidence of discriminatory intent sufficient to establish a question of

Happy Johnson v. Spalding County, Georgia, 24-13531

material fact because it is not explicitly about Johnson's husband's illness as a disqualification for the job and it was not made contemporaneous with or in reference to the promotional decision. See E.E.O.C. v. TBC Corp., 889 F. Supp. 2d 1368, 1381 (S.D. Ga. 2012) (citations omitted), aff'd, 532 F. App'x 901 (11th Cir. 2013) (per curiam) (unpublished) (holding that "stray remarks that are isolated and unrelated to the challenged employment decision are insufficient to establish pretext," and the "Eleventh Circuit has repeatedly indicated that a discriminatory comment, taken alone, is not enough to present a question of material fact on the issue of discriminatory intent.") See also Williams v. Hous. Opportunities for Persons with Exceptionalities, 777 F. App'x 451, 455 (11th Cir. 2019) (per curiam) (unpublished) (citation and internal marks omitted) (finding comment by decisionmaker that "I can't stand your black ass," bore "no relation to the termination decision" and the Eleventh Circuit could not "conclude that [the decisionmaker] based her termination decision on [plaintiff's] race simply by taking [her] statement at face value"). Indeed, Johnson presents no further context for the alleged comment. She does not specifically identify when Humphrey allegedly made the comment, to whom he allegedly made it, or in what context/conversation he allegedly made it. As the district court recognized, without this additional information, the alleged comment that they needed to "lay off of"

23

Happy Johnson v. Spalding County, Georgia, 24-13531

Johnson bares no relation to the promotional decision and alone cannot raise a question of material fact. (Doc. 55, p. 45).

## III. JOHNSON CANNOT SATISFY THE MCDONNELL DOUGLAS FRAMEWORK

The district court, through adoption of the entire R&R, found that the *prima facie* case need not be discussed where, as here, the issues are intertwined with the question of pretext and that, assuming Johnson could establish a *prima facie* case, she failed to create a genuine issue of material fact regarding pretext. (Doc. 55, p. 35; citing among others, Lowe v. Exel, CIVIL CASE NO. 3:17-cv-00014-TCB-RGV, 2018 WL 2016277, at *11 (N.D. Ga. Apr. 27, 2018) (citations omitted), adopted by 2018 WL 11170101, at *2 (N.D. Ga. May 31, 2018), aff'd, 758 F. App'x at 863). The district court, therefore, did not make any specific finding regarding Johnson's *prima facie* case. Nevertheless, Johnson has failed to establish a *prima facie* case under Title VII and the ADA.

### A. Johnson Cannot Establish a Prima Facie Case Under Title VII.

Absent direct evidence of discrimination, a plaintiff may prove discrimination using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). To establish a *prima facie* case

24

Happy Johnson v. Spalding County, Georgia, 24-13531

of Title VII sex discrimination in a promotional decision, Ms. Johnson must prove: (1) that she is a member of a protected minority; (2) that she was qualified and applied for the promotion; (3) that she was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted. Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000).

### i. *Johnson has not established a similarly situated comparator.*

The comparators in the fourth element of the *prima facie* case must be "similarly situated in all material respects." Lewis v. City of Union City, Georgia, 918 F.3d 1213, 1224 (11th Cir. 2019); see also McDade v. Alabama Dep't of Transportation, No. 2:16-CV-158-ECM, 2020 WL 411984 (M.D. Ala. Jan. 24, 2020) (applying the *Lewis* comparator standard in a failure to promote context); see also Tennial v. United Parcel Serv., Inc., 840 F.3d 292 (6th Cir. 2016) (explaining that "[d]ifferences in experience and disciplinary history" can disqualify a plaintiff's proffered comparators). Under the "all material respects" test, "a valid comparison will turn not on formal labels, but rather on substantive likenesses…. a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they cannot reasonably be distinguished. Lewis, 918 F.3d at 1224 (11th Cir. 2019) (citations and quotations omitted). Notably, differences in

employment history is a factor to be considered in assessing whether the comparator is similarly situated to the plaintiff. Anthony v. Georgia, 69 F.4th 796, 805 (11th Cir. 2023).

Here, Johnson and Sellers both worked at SCCI as a Counselor, "[h]owever, the similarities end there" and they cannot reasonably be compared. Id.  Sellers is not similarly situated in "all material respects" to Johnson. Even a cursory glance at their applications demonstrates that they did not share remotely similar employment histories. Sellers has over 32 years of experience in corrections. (Doc. 46-6). He has experience as a Counselor, Assistant Superintendent, and as a Warden. (Id.) Specifically, Sellers has a total of 14 years of experience as a Warden for five different prisons. (Id.) He has worked in both State prisons, and a private prison. (Id.) Sellers clearly had more than enough experience to serve as a Deputy Warden for Spalding County.

Johnson, on the other hand, had roughly 28 years of experience in corrections, but only with SCCI. (Doc. 46-3). A vast majority of her career, 21 years, was spent as the Chief Counselor for SCCI. (Id.) She has **no** experience as a Warden or Deputy Warden, no experience as to how other facilities run, and did not understand the "bigger picture" regarding prison-wide decision making. (Id.; Doc. 46-8; Doc. 46-9; Doc. 46-10). Johnson has not cannot demonstrate that she

Happy Johnson v. Spalding County, Georgia, 24-13531

and Sellers cannot reasonably be distinguished, or even that she is remotely as qualified as Sellers for the position of Deputy Warden of Care and Treatment. Therefore, Sellers is not similarly situated to Johnson in all material respects and is not a proper comparator. Thus, Johnson's *prima facie* case fails on the fourth element.

### B. Johnson Cannot Establish a Prima Facie Case Under the ADA.

Courts follow the same *McDonald Douglas* burden shifting analysis for "association discrimination" claims under the ADA as they do for Title VII claims. Wascura v. City of S. Miami, 257 F.3d 1238, 1242 (11th Cir. 2001). To establish a *prima facie* case of "association discrimination" under the ADA, Johnson must establish: (1) that she was subjected to an adverse employment action; (2) that she was qualified for the job at that time; (3) that the County knew at that time that she had a relative with a disability; and (4) that the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor in the County's decision. Id.

Johnson's ADA claim fails for the same reasons that her Title VII claim fails, with a single additional reason: these circumstances do not raise the inference that Johnson was not promoted because of her husband's health, but instead raise quite the opposite inference. The County's decision to promote

Happy Johnson v. Spalding County, Georgia, 24-13531

Sellers was based on the independent Panel's qualitative ratings of Sellers and Johnson; the independent Panel was impartial and knew nothing about Johnson or her husband's illness, yet rated Sellers significantly higher than Johnson and unanimously recommended him for the position. (Doc. 46-5, p. 119:20-25, 120:1-19; Doc. 46-8; Doc. 46-9; Doc. 46-10). The purpose of the independent Panel is to have unbiased individuals rank the candidates and make their recommendation, which is exactly what it did. These circumstances simply do not raise a reasonable inference that Johnson's husband's illness is the reason she was not promoted.

Johnson argues that a jury could reasonably conclude that Humphrey "orchestrated Sellers' accension into the Deputy Warden position beginning in 2020…" (Doc. 12, p. 38). There is no evidence to support Johnson's conjecture: it is undisputed that Humphrey did not influence the independent panel in any way or otherwise engaged in any actions to support Johnson's conspiracy theory. (Doc. 46-8; Doc. 46-9; Doc. 46-10). Nevertheless, even if it were true, preselection does not constitute discrimination. Licausi v. Symantec Corp., 378 F. App'x 964, 967 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted) ("Preselection does not necessarily indicate discrimination."); Thomas v. Richmond Cnty. Sch. Dist., No. CV 107-092, 2008 WL 4857521, at *7 (S.D. Ga. Nov. 6, 2008). Indeed, even if Humphrey preselected Sellers for the Deputy Warden position, that preselection

28

Happy Johnson v. Spalding County, Georgia, 24-13531

would have placed all candidates at a disadvantage, not only Johnson or other candidates with spouses struggling with an illness, and Johnson has presented no evidence that Humphrey made his alleged preselection based on discriminatory animus. Therefore, any inference drawn between Johnson's husband's illness and Seller's promotion would certainly not be a reasonable one. See also Rojas v. Fla., 285 F.3d 1339 (11th Cir. 2002) ("[The Court is] not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.") Thus, Johnson's *prima facie* ADA claim also fails as a matter of law.

## IV.  JOHNSON FAILED TO REBUT THE COUNTY'S LEGITIMATE NON-DISCRIMINATORY JUSTIFICATIONS FOR PROMOTING SELLERS

Even if Johnson could establish a *prima facie* case under Title VII or the ADA, grant of summary judgment in favor of the County is still proper. Despite Johnson's attempt to complicate this case, it is very simple: the district court properly found that Johnson cannot prevail under either a *McDonnell Douglas* or convincing mosaic theory because she failed to rebut the County's legitimate non-discriminatory justifications for promoting Sellers over Johnson. (Doc. 55, pp. 54-55).

Happy Johnson v. Spalding County, Georgia, 24-13531

Johnson must do more than "simply quarrel" with the wisdom of the non-discriminatory justifications proffered by the County "that might motivate [any] reasonable employer." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). Instead, she must meet each justification head on and rebut them in order to survive summary judgment. Crawford v. City of Fairburn, Ga., 482 F.3d 1305 (11th Cir. 2007); see also Tompkins v. Cuts By Us, Inc., 2019 WL 3387775, at *11 (N.D. Ala. July 26, 2019) (explaining that the plaintiff did not show discriminatory intent based on a convincing mosaic where she rebutted only one of the employer's proffered reasons for denying her a promotion). If, however, a plaintiff has not rebutted the defendant's legitimate non-discriminatory justifications, she cannot establish a claim under either a convincing mosaic or *McDonnell Douglas* framework. Harris v. Jackson, No. 1:19-CV-5849-MLB-JKL, 2022 WL 5240396, at *19 (N.D. Ga. July 18, 2022), report and recommendation adopted as modified, No. 1:19-CV-5849-MLB, 2022 WL 4596343 (N.D. Ga. Sept. 30, 2022); Little v. Star Asia Int'l, Inc., NO. 1:20-cv-397-WMR-JKL, 2021 WL 4815897, at *12 (N.D. Ga. Mar. 10, 2021).

Here, although Johnson continues to erroneously claim that the County presented two legitimate non-discriminatory justifications for promoting Sellers (Doc. 12, p. 40) the County actually presented the following three: (1) Sellers is

30

Happy Johnson v. Spalding County, Georgia, 24-13531

more qualified than Johnson for the Deputy Warden position based on his prior experience working as a warden, (2) Sellers performed better than Johnson in the interview, i.e., received a higher score, and (3) the independent panel unanimously recommended Sellers (because he performed better and was more qualified than Johnson). (Doc. 46-1, pp. 14-15; Doc. 55, p. 37). Johnson only addresses 1 and 3 in her brief and fails to sufficiently or even plausibly rebut any of them. Although she certainly questions the wisdom of the County's decision, she has not pointed to any evidence showing that the district court's conclusion that she did not demonstrate pretext is wrong.

### A. Johnson must do more than suggest a jury could infer she was more qualified than Sellers.

It is not enough that a jury could infer that Johnson was more qualified than Sellers. Johnson must show that she was so clearly __more__ qualified than Sellers such that his promotion over her can be explained only by discriminatory animus. Green v. Miami-Dade Cnty., No. 02-22996-CIV, 2003 WL 22331877, at *8 (S.D. Fla. Sept. 9, 2003) (The issue is not which employee was more qualified, but whether there was such a disparity between [Johnson's and Sellers'] qualifications that no reasonable fact-finder could believe that [ Sellers'] score would have or could have been higher than that of [ Johnson].'") (quoting Rogers-Libert v. Miami-Dade Cnty., 184 F. Supp. 2d 1273, 1280 (S.D. Fla. 2001)).

Happy Johnson v. Spalding County, Georgia, 24-13531

As a threshold matter, Johnson's argument that a jury could infer that she was more qualified than Sellers is simply wrong: the plain and palpable evidence overwhelmingly demonstrates that Sellers had more experience and was far more qualified for the position than Johnson.

But, giving Johnson the benefit of the doubt, her contention that a jury could infer she was more qualified still is certainly not enough to prove pretext. Indeed, Johnson has completely failed to establish that, after considering hers and Sellers' respective qualifications, discriminatory animus is the only explanation for his promotion. Quite to the contrary, Johnson merely points to hers and Sellers' performances at SCCI leading up to the ultimate promotion, arguing that because Sellers scored a "3" in his first six months as counselor and Johnson scored a "4.86," a jury could infer that Johnson was more qualified than Sellers for the Deputy Warden position. (Doc. 12, p. 42). Considering Sellers' extensive background as a Warden, it is doubtful that any reasonable jury would infer that discrimination was the only explanation for his promotion to Deputy Warden over Johnson, especially considering the fact the Johnson herself gave Sellers the score of "3". (Doc. 50-22).  But, in any event, questioning the significance of a single data point in the matrix of Sellers' and Johnson's qualifications is not enough to prove that Johnson was so clearly more qualified than Sellers that a reasonable jury

Happy Johnson v. Spalding County, Georgia, 24-13531

must concluded that discrimination is the only explanation for his promotion and the district court properly recognized this after considering Johnson's proffered evidence. (Doc. 55, p. 48). Thus, as the district court correctly found, Johnson has not rebutted the County's first legitimate non-discriminatory justification for promoting Sellers.

### B. Humphrey's alleged comment to Griffin does not prove pretext.

Johnson points to Humphrey's alleged comment that they "needed to lay off of [Johnson] because she has too much going on with her husband being so sick" as proof of pretext. (Doc. 12, p. 41). This alleged comment, however, does not come close to rebutting any of the County's legitimate non-discriminatory justifications. Indeed, as the district court recognized, even if Humphrey made the comment as Johnson alleges, he did not make this comment to the independent Panel, which knew nothing of Johnson's husband's illness, yet rated Sellers the highest and unanimously recommended him for the position over Johnson. What is more, the alleged comment does nothing to rebut the fact that Sellers clearly had more experience relevant to the Deputy Warden position and preformed far better in the interview. All of which constitute independent legitimate non-discriminatory justifications for promoting Sellers over Johnson. Thus, Johnson's proffering of

Happy Johnson v. Spalding County, Georgia, 24-13531

Humphrey's alleged comment does not rebut the County's non-discriminatory justifications and the district court was correct in finding the same.

### C. Humphrey did not ignore Sellers' alleged application misrepresentations and discrepancies.

Johnson claims that "Humphrey acknowledged the glaring discrepancies between the two applications submitted by Sellers just six months apart." (Doc. 12, p. 43). What Johnson fails to note is that Humphrey acknowledged the discrepancies when counsel pointed them out **during his deposition** in connection with this lawsuit, not before then. (Doc. 55, p. 49). Indeed, he testified very clearly that at the time of the application process, he did not compare Sellers' applications and did not notice any discrepancies. (Doc. 46-5, pp. 105:12-106:11).

Further, Johnson wrongfully contends that Humphrey deviated from his standard procedure by not calling any of Sellers' prior employers. (Doc. 12, p. 43). The district court recognized, and the record clearly shows, that is not true. (Doc. 55, p. 49). Humphrey testified that he would typically call an applicant's prior employer if there were disciplinary concerns or if the applicant had a large gap in employment, i.e., over two years. (Doc. 46-5, pp. 16:19-18:2). Nothing on Sellers' application indicated any prior disciplinary concerns or gaps in employment longer than a single year. (Doc. 46-7). Significantly, Humphrey called the Commissioner at the Department of Corrections who told him that there were no concerns with

Sellers. (Doc. 46-5, pp. 66:25-69:17). Thus, the district court properly recognized, not calling Sellers' prior employers was exactly in line with Humphrey's standard practice. Johnson's claim that Humphrey demonstrated "willful blindness" to Sellers' "resume fraud" (Doc. 12, p. 44) is completely unsupported by any record evidence and Johnson cannot rebut the district court's conclusion that Sellers was more qualified than Johnson, scored the highest in the interview, and was unanimously recommended for the position by the panel.

### D. Johnson's conjecture that a jury could infer Humphrey did not place any weight on the panel's recommendation is not enough to prove pretext.

Johnson argues that because Humphrey regularly used interview panels to make hiring decisions, a jury could infer that Humphrey placed no weight on the outcome of the interview panel. (Doc. 12, p. 45). By that logic, any standard hiring procedure (e.g., interviews, reviewing resumes, assessing employment history, etc.) that an employer gives as a justification for its employment decisions must be construed as pretext because standard procedure is just a matter of course. Putting aside the fact that this argument is simply illogical, it finds no support in the record. Johnson argues in typical conclusory fashion that a jury could make the "reasonable inference" that the Humphrey did not care about the outcome of the interview panel but provides no evidence to support it. (Id.) That is because, as the

district court properly recognized, the record clearly shows that Humphrey based his hiring decisions on the candidates' ratings from the interviews: he hired the highest scoring applicants with no known disciplinary history.[3] Performance on an interview is an established non-discriminatory justification for a promotional decision, and Johnson's circular and unfounded argument does not rebut it. See Conner v. Lafarge N. Am., Inc., 343 F. App'x 537 (11th Cir. 2009) (holding that poor performance on interview panel constitutes a legitimate non-discriminatory justification in the failure to promote context.)

Johnson points to a single time that Humphrey allegedly deviated from his standard practice: when Johnson and Griffin **rated Sellers higher than every other candidate but recommended a lower rated and less qualified applicant.** (Doc. 12, pp. 45-46). But this argument fails for two reasons: First, Humphrey's standard practice was to hire the **highest rated applicant without disciplinary issues**, not to hire the applicant recommended by the panel. Second, hiring Sellers was consistent with his standard practice because he was the highest rated applicant and had no disciplinary issues that anyone was aware of. Further, Johnson's speculates that a jury could infer that Humphrey would have ignored the

---

[3] Johnson claims that Humphrey did not follow his standard procedure and that is why he did not know of Sellers' supposed disciplinary history, but this baldly mischaracterizes the record, as discussed below and in Subsection IV (C) of this Brief.

Happy Johnson v. Spalding County, Georgia, 24-13531

panel's recommendation if it recommended her rather than Sellers, but this is pure conjecture and does nothing but suggest that Humphrey would have followed his standard procedure in the event that the panel recommended a lower scoring applicant: to hire the highest scoring applicant with no known disciplinary history. Johnson's self-serving conjecture is not enough to prove that hiring the highest scoring applicant and following the unbiased independent interview panel's recommendation is pretext for discrimination.

Additionally, Johnson claims that Humphrey "spotted red flags on Sellers' application" and chose not to call his prior employer. (Doc. 12 p. 46). But this is not an accurate summary of the record. First, as noted above, Humphrey acknowledged the discrepancies in Sellers' application **during his deposition as part of this lawsuit**; there is no evidence that he had any knowledge of them during the application process. Second, the record citation Johnson provided does not support her claim. (Doc. 46-5, pp. 66:24-67:4 (Q. Okay. Do you remember calling anyone listed on Mr. Sellers' application for counselor before he was hired? A. I did not call anyone he has listed, no.)) Indeed, the citation contains no language supporting the contention that Humphrey knew about Seller's alleged disciplinary history and the district court properly recognized this in finding that

Happy Johnson v. Spalding County, Georgia, 24-13531

Johnson failed to rebut the County's legitimate non-discriminatory justifications. (Id.)

Even assuming, *arguendo*, that Humphrey knew about Sellers' application discrepancies and ignored them because he pre-selected Sellers for the Deputy Warden position (which finds no support in the record), it still does not prove discriminatory animus or pretext. As noted above, and as the district court properly acknowledged, even if Humphrey did orchestrate Sellers' ascension to the Deputy Warden position starting in 2020, that preselection would have placed all candidates at a disadvantage, not only female candidates or candidates with spouses struggling with health concerns. Licausi v. Symantec Corp., 378 F. App'x 964, 967 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted) ("Preselection does not necessarily indicate discrimination."); Thomas v. Richmond Cnty. Sch. Dist., No. CV 107-092, 2008 WL 4857521, at *7 (S.D. Ga. Nov. 6, 2008) See also Rojas v. Fla., 285 F.3d 1339 (11th Cir. 2002) ("[The Court is] not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

Johnson also argues that a jury could "view Johnson's knowledge regarding Spalding County procedures as a plus not a minus…" and that Humphrey hired

Sellers over Johnson even though he knew "the panelists' one criticism of Johnson was based on an incorrect assumption…" (Doc. 12, p. 47-48). This argument fails for three reasons.

First, the panel did not view Johnson's Spalding County knowledge as a negative, it viewed her lack of knowledge outside her experience at SCCI as a negative and saw that Sellers had much more knowledge about prison-wide decision making. (Doc. 46-8; Doc. 46-9; Doc. 46-10).

Second, as the district court rightly noted, Johnson has presented no evidence showing that if Humphrey had corrected the panelists' allegedly flawed assumption, she would have gained the necessary 25 additional points to place her above both Sellers and the second-place candidate. (Doc. 64, p. 9 n2). This argument further ignores the fact that the recommendation from the panel is only one the County's justifications, and the most important justification/consideration was which candidate scored the highest. Indeed, Humphrey's standard practice was to hire the highest scoring applicant without a known disciplinary history, not to hire the candidate recommended by the panel (although the panel would usually recommend the highest scoring applicant). The district court properly recognized this in dispelling Johnson's argument.

Third, as the district court properly noted, Johnson continuously fails to acknowledge that Title VII does not empower a court (or jury) to "sit as a super-personnel department that reexamines an entity's business decisions." Gogel v. Kia Motors Mfg. of Georgia, Inc., 967 F.3d 1121, 1143 (11th Cir. 2020) (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)). And that "an employer may take an employment action for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason, and it is not sufficient for [Johnson] to simply identify a perceived shortcoming in [the County's] selection process and leave it up to sheer speculation that it was caused by . . . animus towards a protected class." Delgado v. U.S. Dep't of Transp., 709 F. Supp. 2d 1360, 1369 (S.D. Fla. 2010)) (citing Nix v. WLCY Radio/Rahall Comms., 738 F.2d 1181, 1187 (11th Cir.1984) (quotations omitted)). Johnson has not rebutted any of the County's legitimate non-discriminatory justifications for promoting Sellers, and her conclusory claims that a jury could make logical leaps to infer discriminatory intent is nothing more than an attempt to have a jury reexamine the County's legitimate business decisions. Without more, Johnson has not met her burden of rebutting the County's non-discriminatory justifications for promoting Sellers and summary judgement is

Happy Johnson v. Spalding County, Georgia, 24-13531

therefore necessary and proper under both a convincing mosaic and *McDonnell Douglas* theory.

## V.    JOHNSON'S MIXED MOTIVE CLAIM FAILS AS A MATTER OF LAW

Johnson's last-ditch effort to save her claim by reframing it as a mixed motive claim fails as well. (Doc. 12, p. 48).  As the district court noted through adoption of the entire R&R, Johnson's claim is really that, but for Humphrey's discriminatory intent, she would have been selected for the Deputy Warden position. (Doc. 55, p. 59) Despite perfunctorily invoking a mixed-motive theory, she is in fact pursuing a single-motive theory of discrimination – i.e., that the true reason for [her non-selection] was [her] . . . gender and that the employer's stated reasons for [her non-selection] . . . were pretext for discrimination." (Id.) But the record clearly shows that there is no evidence that would support a mixed motive theory as opposed to a single motive claim.

Even assuming that Johnson properly raised a mixed motive claim, the district court properly found that it still fails. (Doc. 55, p. 60). To establish a mixed motive claim, Johnson must show by a preponderance of the evidence that her gender motived the County's decision. Little, 2021 WL 4815897, at *13. First, Johnson has presented no admissible direct evidence by which a reasonable jury could conclude by a preponderance that her gender played a role in her non-

Happy Johnson v. Spalding County, Georgia, 24-13531

selection for the Deputy Warden position. Further, as discussed in detail above, Johnson has not presented circumstantial evidence that proves by a preponderance that the County's decision to promote Sellers was motivated by unlawful animus. Rather, the County's decision was based exclusively on the facts that Sellers was far more qualified than Johnson, Sellers performed far better and scored far higher on the interview than Johnson, and the independent interview panel unanimously recommended Sellers over Johnson. Accordingly, Johnson's throw-away mixed motive argument fails as a matter of law and the district court properly dismissed it.

## **CONCLUSION**

This Court must affirm the district court's ruling. Johnson has failed to raise any questions of material fact for a jury. She has not presented any direct evidence of discrimination, and thus must provide enough circumstantial evidence to raise a reasonable inference of discriminatory intent. The County, however, has rebutted all of her circumstantial evidence by providing legitimate non-discriminatory justifications for its promotional decision. Johnson has not and cannot rebut the County's justifications, so her convincing mosaic and *McDonnell Douglas* theories both fail as a matter of law. Finally, Johnson's mixed motive theory fails because she has not produced any evidence not already disposed of in the pretext analysis

Happy Johnson v. Spalding County, Georgia, 24-13531

that could show by a preponderance of the evidence that gender was a motivating factor for her non-selection.

Under these facts, no reasonable jury could find in favor of Johnson's far-fetched claim, and the district court properly granted summary judgment. Accordingly, the County respectfully requests that this Court affirm in its entirety the district court's order granting summary judgment as to all of Johnson's claims.

Respectfully submitted this 18th day of February, 2025.

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**

*/s/ Sean Keenan*
Sean Keenan
Georgia Bar No. 523871

Meridian II, Suite 2000
275 Scientific Drive
Norcross, Georgia 30092
skeenan@cmlawfirm.com
(768) 684-2154
Counsel for Appellee

Happy Johnson v. Spalding County, Georgia, 24-13531

## <u>CERTIFICATE OF TYPE SIZE AND STYLE</u>

Counsel for Appellee hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 9,243 words. This brief was prepared with MS Word, Times New Roman, 14-point type.

Respectfully submitted this 18th day of February, 2025.

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**

<u>*/s/ Sean Keenan*</u>
Sean Keenan
Georgia Bar No. 523871

1

Happy Johnson v. Spalding County, Georgia, 24-13531

## **CERTIFICATE OF SERVICE**

Pursuant to FRAP 25(a)(2)(B) and 11th Cir. R. 31-5, I hereby certify that I have this day electronically filed and mailed the foregoing Brief of Appellees, using First-Class Mail, to the Clerk for the Eleventh Circuit Court of Appeals and served counsel for Appellant with same via the Court's electronic filing system.

This 18th day of February, 2025.

**CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP**

*/s/ Sean Keenan*
Sean Keenan
Georgia Bar No. 523871

1